UNITED STATES, Appellee,

v.

Charles W. BURNETTE, Private First
Class U.S. Army, Appellant.

No. 66,810.

CM 9000438.

U.S. Court of Military Appeals.

Argued April 10, 1992.

Decided Aug. 28, 1992.

For Appellant: *Captain Victor A. Tall*
(argued); *Lieutenant Colonel James H.
Weise, Captain Michael W. Meier, Cap-
tain Robin N. Swope* (on brief).

For Appellee: *Captain Sheila E. Mc-
Donald* (argued); *Colonel Dayton M.
Cramer, Lieutenant Colonel Daniel J.
Dell'Orto, Major Kenneth T. Grant, Cap-
tain Samuel J. Smith, Jr.* (on brief).

*Opinion of the Court*

SPORKIN, District Judge:[1]

During January and February 1990, ap-
pellant was tried by a general court-martial
composed of a military judge sitting alone
at Fort Campbell, Kentucky. Pursuant to
his pleas, he was found guilty of one speci-
fication of attempted larceny; three specifi-
cations of conspiracy; thirteen specifica-
tions of larceny; seven specifications of
forgery; and one specification of wrongful
possession of a military identification card,
in violation of Articles 80, 81, 121, 123, and
134, Uniform Code of Military Justice, 10
USC §§ 880, 881, 921, 923, and 934, respec-
tively. Appellant was sentenced to a bad-
conduct discharge, confinement for 7 years,
total forfeitures, and reduction to the low-
est enlisted grade. The convening authori-
ty approved the sentence as adjudged, ex-
cept for confinement in excess of 4 years.
The Court of Military Review affirmed the
findings and the approved sentence on Feb-
ruary 14, 1991, in an unpublished opinion.

This Court granted review of the follow-
ing issue:

WHETHER THE ARMY COURT OF
MILITARY REVIEW ERRED IN FIND-
ING THAT APPELLANT'S PLEAS OF
GUILTY TO CHARGE I, SPECIFICA-

1. Of the United States District Court for the
District of Columbia, sitting by designation pur-

suant to Article 142(f), Uniform Code of Mili-
tary Justice, 10 USC § 942(f).

TIONS 5 AND 6 (FORGERY), WERE PROVIDENT WHERE THE DOCUMENT IN QUESTION (APPLICATION FOR CHECKING ACCOUNT) LACKS LEGAL EFFICACY AND CANNOT BE THE SUBJECT OF FORGERY AS A MATTER OF LAW.

We hold that appellant's unsupported post-trial renunciation of his guilty-plea-inquiry responses is not a proper basis for reversing the above forgery convictions under Article 123. *United States v. Harrison*, 26 MJ 474 (CMA 1988).

## BACKGROUND

The guilty-plea inquiry shows the following facts. Appellant, a Private First Class stationed at Fort Campbell, Kentucky, found a wallet belonging to Christ M. Skezas, a fellow soldier. The wallet contained an American Express charge card and a military identification card, in addition to various other items. Appellant decided to use the charge card and I.D. to fraudulently purchase numerous items of merchandise from local merchants.

Some time later, appellant executed a scheme to open fraudulent checking accounts at various banks under the name of Christ M. Skezas. Appellant planned to use the credit card and I.D. as identification in opening these accounts. When a bank issued him temporary checks, appellant intended to make and utter those checks for amounts greater than the minimum amount he deposited in opening the checking accounts.

Implementing this plan, appellant opened checking accounts under the name of Christ M. Skezas by using the charge card and I.D., and by forging Skezas' signature on the checking account application. During the month of September 1989, appellant did make and utter, with the intent to defraud, numerous checks to various merchants, overdrawing his checking accounts by several hundred dollars. An accomplice, Specialist William S. Ivey, also stationed at Fort Campbell, conspired with and assisted appellant in carrying out this fraudulent scheme. Specialist Ivey was also charged and convicted by a general court-martial for his actions. *United States v. Ivey*, 32 MJ 590 (ACMR 1991). His case is also on appeal before this Court.

Appellant was eventually caught when he and Specialist Ivey attempted to purchase some computer equipment from a local Radio Shack store. Appellant made and uttered a check drawable on a fraudulent checking account in the amount of $1,369.47, and signed the name Christ M. Skezas. When the merchant used Christ M. Skezas' stolen charge card to verify the transaction, he was informed by the American Express Company that the charge card had been reported stolen. The merchant notified the local police who in turn contacted the Army Criminal Investigation Command at Fort Campbell, Kentucky.

Subsequent to his arrest, appellant made a full confession and signed a stipulation of fact admitting that he had made and uttered checks based upon his fraudulent checking accounts under the name of Christ M. Skezas.

## DISCUSSION

Article 123 defines forgery as follows:

Any person subject to this chapter who, with intent to defraud—(1) falsely makes or alters any signature to, or any part of, *any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice;* or (2) utters, offers, issues, or transfers such a writing, known by him to be so made or altered; is guilty of forgery and shall be punished as a court-martial may direct.

(Emphasis added.)

Paragraph 48c(4), Part IV, Manual for Courts–Martial, United States, 1984, further explains the types of writings which can be the subject of a forgery, as follows:

[T]he writing must appear either on its face or from extrinsic facts to impose a legal liability on another, or to change a legal right or liability to the prejudice of another. If under all the circumstances

the instrument has neither real nor apparent legal efficacy, there is no forgery.

The Army Court of Military Review in the companion case held that when a customer deposits funds to open a checking account at a bank, a contract is formed, affecting the legal and financial obligations of both parties. It further stated:

An application for a checking account, when accepted by the bank, creates a contract, conferring rights and imposing obligations on both the bank and the depositor. The bank is obliged to pay checks drawn on the account, perform certain bookkeeping functions, and provide blank checks, the means used in this case to commit the other offenses. The depositor is obliged to pay service charges and reimburse the bank for overdrafts. *See generally* 10 Am.Jur.2d *Banks* §§ 493, 494, 540 (1963). Accordingly, we hold that an application for a checking account is a proper subject of forgery.

*United States v. Ivey, supra* at 591.

Appellant, relying on *United States v. Hopwood*, 30 MJ 146 (CMA 1990), argues that submission of a false checking account application to a bank is not forgery, but merely making a false writing. In that case, a servicemember was charged with forgery for submitting an application for credit to a credit union that contained false information and false signatures. This Court determined that submission of an application for credit was not a forgery, stating:

Certainly the credit application was a preliminary—and probably necessary—step towards a purchaser's entry into a transaction that would appear to create legal rights and liabilities....[However,] [t]he ... credit application could not be "forged" in violation of Article 123 because, even when considered in light of companion documents and the intended purchase transaction, the application itself, if genuine, would not create any legal right or liability on the part of the purported makers.

30 MJ at 148.

In *United States v. Thomas*, 25 MJ 396 (CMA 1988), appellant notes that this Court confronted a similar problem. There, we held that a falsified "Commanding Officer's Letter," used as a credit reference, did not constitute forgery under Article 123, because it "lacked ... legal efficacy." *Id.* at 402.

We do not believe that the *Hopwood* and *Thomas* decisions are controlling here, or that a checking-account application can never be the subject of a forgery. The facts in the record are controlling and those before this Court clearly distinguish the above-noted cases from the case before us. First, appellate defense counsel's argument on legal efficacy contradicts appellant's own statements in the record. At his plea inquiry, appellant admitted that, in opening his accounts, he was "going to create a debt" which "would apparently operate to [the] legal prejudice" of Christ M. Skezas. *See United States v. Miles*, 12 MJ 377, 379 (CMA 1982). What is more, appellant's pleas precluded the prosecution from putting its entire case on the record and fully developing the facts concerning these serious offenses.[2] Finally, the stipulation of fact and guilty-plea-inquiry responses suggest a normal banking situation where customary fees are charged on opening an account. *See generally Best v. United States National Bank of Oregon*, 303 Or. 557, 739 P.2d 554 (1987); *Perdue v. Crocker National Bank*, 38 Cal.3d 913, 216 Cal.Rptr. 345, 702 P.2d 503 (1985).

Thus, the guilty pleas were properly accepted as the inquiry clearly demonstrated guilt of the charges lodged against appellant sufficient to form the basis of knowing and informed pleas. Under these circumstances, as noted in *United States v. Prater*, 32 MJ 433, 437–38 (CMA 1991), and

2. We note that a remand in this case for further proceedings would serve little purpose. The Article 32, UCMJ, 10 USC § 832, investigation attached as an allied paper contains a copy of the subject document. It indicates the account holder incurs various fees for maintenance of the account and dormancy. *See* B. Clark, *The Law of Bank Deposits, Collections, and Credit Cards* ¶ 2.01[4][a] *Bank Service Charges* (3d ed. 1990).

*United States v. Harrison*, 26 MJ 474 (CMA 1988), this Court will not disturb the guilty pleas.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.

Judge CRAWFORD did not participate.