UNITED STATES, Appellee

v.

Guillermo QUEZADA, Operations Specialist Seaman Apprentice U.S. Navy, Appellant.

Nos. 93–0661.
CMR No. 92 0373.

U.S. Court of Military Appeals.

Argued April 5, 1994.

Decided Aug. 17, 1994.

For Appellant: *Lieutenant William M. Schrier, JAGC, USNR (argued); Lieutenant Michael C. Pallesen, JAGC USNR* (on brief), *Captain Dwight H. Sullivan, UCMC.*

For Appellee: *Lieutenant John R. Livingston, Jr., JAGC, USNR* (argued); *Colonel T.G. Hess, USMC, Commander S.A. Stallings, JAGC, USN, Lieutenant Mary Grace McAlevy, JAGC, USNR, Captain Brett D. Barkey, USMC* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a special court-martial composed of a military judge sitting alone on October 24, 1991, at the Naval Legal Service Office, Subic Bay, Republic of the Philippines. This court-martial was convened by the Commanding Officer, USS Independence (CV 62). Appellant pleaded guilty to missing movement through neglect and unauthorized absence (2 specifications), in violation of Articles 87 and 86, Uniform Code of Military Justice, 10 USC §§ 887 and 886, respectively. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $500.00 pay per month for 2 months. On January 13, 1992, the convening authority approved the sentence. The Court of Military Review affirmed these results in an unpublished opinion on January 29, 1993.

This Court, on August 9, 1993, granted review of the following issue raised by appellate defense counsel:

WHETHER AN EIGHT–HOUR DEPENDENTS' CRUISE IS A MOVEMENT FOR PURPOSES OF ARTICLE 87.

We hold that such a cruise is a movement within the meaning of Article 87 and that

appellant's pleas of guilty to this military offense were valid. *See generally United States v. Harrison*, 26 MJ 474, 476 (CMA 1988).

Appellant was charged with and pleaded guilty to the following offense under Article 87:

Specification: In that [appellant] did, at Naval Air Station North Island, San Diego, California, on or about 29 June 1991, through neglect, miss the movement of the USS Independence with which he was required in the course of duty to move.

The military judge questioned appellant about this offense as follows:

The elements of the offense alleged in the Specification to Charge II are as follows:

First, that you were required in the course of duty to move with the USS INDEPENDENCE;

Second, that you knew of the prospective movement of the ship;

Third, that at the Naval Air Station North Island, San Diego, California, on or about 29 June 1991, you missed the movement of the ship; and,

Fourth, that you missed the movement through neglect.

MJ: You're advised that the term "movement" [a]s used in this Specification, means a major transfer of a ship involving a substantial distance and period of time. The word does not include minor changes in the location of a ship. You're advised that the term "through neglect" means the omission to take such measures as are appropriate under the circumstances to assure presence with the ship at the time of a scheduled movement, or doing some act without giving attention to its probable consequences in connection with the perspective movement to such a distance as would make it likely that you could not return in time for the movement. . . .

\* \* \*

MJ: Now, turning your attention to the Specification to Charge II. You've told me that you were a member of the USS INDEPENDENCE and that on the morning of the 29th of June you began a period of unauthorized absence. Did—was the USS INDEPENDENCE scheduled to move on the 29th of June?

ACCUSED: Yes, sir.

MJ: And where was it scheduled to move to?

ACCUSED: It was a dependents' cruise, sir.

MJ: And this was a dependents' cruise. How long was the dependents' cruise?

ACCUSED: Approximately 8 hours just about. Less than a day, sir.

MJ: So, this was a one-day cruise to familiarize dependents with the USS INDEPENDENCE?

ACCUSED: Yes, sir.

MJ: So this was more than just a minor change in the location of a ship?

ACCUSED: Yes, sir.

MJ: It was not just moving from pier to pier, but it was pulling out to sea for some period of hours?

ACCUSED: Yes, sir.

MJ: And are you satisfied that that is a—constitutes a movement of the USS INDEPENDENCE?

ACCUSED: Yes I do, sir.

MJ: And you've discussed that with your counsel?

ACCUSED: Yes, sir.

MJ: And are you satisfied that indeed that was a movement?

ACCUSED: Yes, sir.

MJ: Now, did the USS INDEPENDENCE actually move on the 29th of June?

ACCUSED: Yes, sir.

The Court of Military Review stated, *inter alia:*

We hold that an aircraft carrier's movement out to sea albeit for only a period of eight hours does constitute a "substantial" movement, even when such a movement involves a dependents' cruise. We are aware that a duty section or skeleton crew is capable of moving a ship from pier to pier. However, for an underway beyond the breakwater and into the open seas the considerations of safety for ship and crew

are much the same as they would be for a longer deployment. As reflected in the Government's brief, additional safeguards aboard the carrier are required by the addition of large numbers of dependents aboard ship. Thus, the demands placed on the crew require the presence of all those scheduled to go to sea for the event.

Unpub. op. at 4.

---

Appellant, for the first time before the Court of Military Review, argued that his pleas of guilty to missing movement must be set aside. He asserted that his responses to the guilty-plea inquiry do not establish this military offense as a matter of law because he only admitted to missing an insubstantial movement of his ship, i.e., "an 8–hour dependents' cruise." Before us, he argues that Article 87 only prohibits missing the movement of a ship in the special military situations encountered in World War II. We disagree.

We note that Article 87 states:

§ 887. Art. 87. **Missing movement**

Any person subject to this chapter who through neglect or design misses the movement of a ship, aircraft, or unit with which he is required in the course of duty to move shall be punished as a court-martial may direct.

■ The plain language of this codal provision centers on appellant's duty to move with a ship, not with the purpose of the ship's movement.* See United States v. Graham, 16 MJ 460, 462 (CMA 1983). See generally Conroy v. Aniskoff, —— U.S. ——, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993). Moreover, the prior experience of the Navy with this type of military misconduct has not deterred this Court from giving this language its full and natural meaning. See United States v. Graham, 16 MJ at 462–63 n. 3; see also United States v. Smith, 26 MJ 276 (CMA 1988). Finally, appellant pleaded guilty to this offense and agreed that the 8–hour "dependents' cruise" was a movement within the meaning of Article 87. 40 MJ at 110. See United States v. Johnson, 3 USCMA 174, 177, 11 CMR 174, 177 (1953). Such action precluded the need for any proof that the prosecution might have had concerning the additional missions of the aircraft carrier during the movement in question. See United States v. Burnette, 35 MJ 58, 61 (CMA 1992) (appellant's pleas precluded prosecution from putting its entire case on record and fully developing facts).

Thus, the granted issue is without merit.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

---

* Paragraph 11, Part IV, Manual for Courts–Martial, United States, 1984, explains the word "movement" in Article 87, Uniform Code of Military Justice, 10 USC § 887, as follows:

   c. *Explanation.*
   (1) *Movement.* "Movement" as used in Article 87 includes a move, transfer, or shift of a ship, aircraft, or unit involving a substantial distance and period of time. Whether a particular movement is substantial is a question to be determined by the court-martial considering all the circumstances. Changes which do not constitute a "movement" include practice marches of a short duration with a return to the point of departure, and minor changes in location of ships, aircraft, or units, as when a ship is shifted from one berth to another in the same shipyard or harbor or when a unit is moved from one barracks to another on the same post.

To the extent this explanation accurately reflects substantive military criminal law (see United States v. Mance, 26 MJ 244, 252(CMA), cert. denied, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988)), we agree that the movement of an aircraft carrier for 8 hours cannot in any reasonable sense be considered "minor."