UNITED STATES, Appellant

v.

Robert G. HAHN II, Boatswain's Mate
Third Class, U.S. Navy, Appellee.

No. 95–0173.
CMR No. 93 1526.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 6, 1995.

Decided Aug. 30, 1996.

For Appellant: *Commander Mary T. Hall,*
JAGC, USN (argued); *Lieutenant William
M. Schrier,* JAGC, USNR (on brief); *Major
Steven P. Hammond,* USMC.

For Appellee: *Lieutenant John R. Living-
ston, Jr.,* JAGC, USN (argued); *Commander
D.H. Myers,* JAGC, USN (on brief); *Colonel
J. Composto,* USMC.

*Opinion of the Court*

EVERETT, Senior Judge:

At his general court-martial at Naval Station, Mayport, Florida, appellant pleaded guilty to larceny (6 specifications) and to removing property to prevent its seizure by law enforcement agents, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. After the military judge had entered findings in accordance with these pleas, he sentenced appellant to a bad-conduct discharge, confinement and forfeiture of $400.00 pay per month for 9 months, and reduction to the lowest enlisted grade. The convening authority approved these results, except, as a matter of clemency, he suspended the forfeitures for 9 months on condition that appellant maintain an allotment to his dependents in an amount equal to the monthly suspended pay. The Court of Military Review * affirmed in an unpublished opinion.

In due course, this Court granted review to consider appellant's attack on the providence of his guilty pleas to removing property to prevent its seizure by agents of the Naval Investigative Service (NIS). 42 MJ 212 (1995). Particularly, he urges that the NIS already had constructively seized the property in question so that, as a matter of law, his subsequent transportation of it could not constitute removal to prevent its seizure. Now, however, after searching but finding nothing in this record "in substantial conflict" with appellant's admissions of guilt, *see United States v. Higgins,* 40 MJ 67, 68 (CMA 1994), we reject this contention.

## I

During a consensual search of another sailor's house, NIS agents found property that they suspected appellant had stolen. In order to confirm the identity of the thief, the agents suggested that the sailor telephone appellant and tell him that the NIS was going to search the house that evening and that appellant had to remove the property beforehand. When appellant arrived shortly thereafter and removed the items to his car,

surveilling agents swarmed in and apprehended him.

During the providence inquiry into appellant's tendered guilty pleas, *see* Art. 45(a), UCMJ, 10 USC § 845(a); RCM 910(c)(1), Manual for Courts–Martial, United States (1995 ed.), the military judge correctly informed appellant that the first element of this offense was "[t]hat ... one or more persons authorized to make searches and seizures *were seizing or were about to seize or were endeavoring to seize* certain property...." (Emphasis added.) *See* para. 103, Part IV, Manual, *supra.* In response, appellant acknowledged that this and the other elements of the offense "fairly describe[d]" what he did.

Subsequently, though, when appellant recited the factual circumstances that gave rise to this specification, *see* RCM 910(e), the military judge paused and questioned whether they in fact described a scenario in which agents had been "seizing, about to seize, or endeavoring to seize" the property in question. *See* para. 103b(1), Part IV. He noted that the agents "had the opportunity to seize it, they elected not to, but they elected to leave it out as bait, and see what the accused would do." Questioning whether this demonstrated that the agents "were about to seize the property," he reiterated:

They had an ample opportunity to seize it if they had wanted to, and elected not to. They decided to, as I say, use it as bait. So were they about to seize it? I don't know. Evidence *doesn't* seem to indicate that.

Trial counsel argued in response that the fact that the agents actually did seize the property immediately upon appellant's apprehension "seems to make clear ... that they were about to seize it...." Although not seeming to be entirely persuaded "[w]hether that constitutes the offense under this Article or not," the military judge decided to "accept the Government's position that it does." The remainder of the providence inquiry was uneventful.

* *See* 41 MJ 213, 229 n. * (1994).

## II

In this Court, appellant focuses on this same element of the offense, but his theory of a defect is quite different from the problem articulated by the military judge. At trial, the discussion concerned whether the agents were *about to seize* the property, with the military judge observing that their intention to do so might be belied by their having had a clear opportunity to seize it before calling appellant, yet eschewing it. On appeal, in contrast, appellant argues that the NIS *already had seized* the property before he was called to remove it: "Simply put, NIS agents had brought the property within their physical control when they entered the [other sailor's] house, searched the premises, identified the stolen property, and lay in wait for Appellant to arrive." Final brief at 4. On this record, we are unable to find any substantive support for either of these positions.

▆ Appellant's first argument is easily dismissed. As trial counsel suggested and as the military judge ultimately accepted, it is illogical to assume that NIS agents would not seize stolen property once their ploy to identify the thief had been pursued fully. Any speculation to the contrary would seem fanciful. Appellant's pleas of guilty were a judicial admission to all the elements of this offense and were a waiver of a trial at which the prosecution would have had the burden of proving that the agents intended to seize the property and, thus, had been "about to seize" it. *See United States v. Burnette*, 35 MJ 58, 60 (CMA 1992). Nothing in the record is substantially in conflict with appellant's judicial admission. *See United States v. Higgins, supra; United States v. Prater*, 32 MJ 433, 436 (CMA 1991).

▆ Appellant's second contention is only somewhat more problematic. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *see California v. Hodari D.*, 499 U.S. 621, 624, 111 S.Ct. 1547, 1549, 113 L.Ed.2d 690 (1991). At most, appellant and the NIS jointly possessed the property; but there can be no serious claim on this record that the NIS agents had "meaningful[ly] interfer[ed] with [appellant's] possessory interests in" it—witness the ease with which appellant was able to gather up the property and move it to his car. *See generally State v. Brider*, 386 So.2d 818, 819 (Fla.App.1980).

The record does not reflect that these agents seized or even touched the property in question. Application of appellant's theory to this case—as far as it is developed in the record in light of appellant's guilty pleas, *see United States v. Burnette, supra*—would require a holding that whenever a law enforcement agent observes stolen or contraband property and has the opportunity to wrest exclusive physical custody of it, as a matter of law the agent thereby has seized it at that moment. Such a holding would be inconsistent with the concept of seizure as set out in *Jacobsen* and is without any basis in legal theory of which we are aware. We are unwilling to depart so far from any precedent.

## III

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and GIERKE concur.